UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

LEILANI BLAKE,

     Plaintiff,


  -vs-                           Case No.
                                       Hon.
                                       Magistrate Judge:
TRANSUNION, LLC,
GRANITE BAY ACCEPTANCE, INC.,
AUTOMOTIVE PRODUCT CONSULTANTS, INC.,
       *d/b/a Automative Product Consu*,
       *d/b/a APC Integrated Services Group, Inc.*,
NRRM, LLC,
       *d/b/a StopRepairBills.com*,
       *d/b/a CarShield LLC*,
LEASE MATURITY SERVICES, LLC,
       *d/b/a Schaumburg Pre-Driven,*
       *d/b/a Schaumburg Pre Driven, LLC,* and
       *d/b/a Schaumburg Pre Driven,*

     Defendants.


## COMPLAINT & JURY DEMAND

*Leilani Blake states the following claims for relief:*

## INTRODUCTION

1.    Personal financial information may reveal the most private details of a

consumer's lifestyle or mode of living, and any improper use constitutes an

invasion of privacy of the consumer. As the banking and credit industries have developed systems and computer databases for legitimate, authorized and convenient access to this private, financial information, it has become, as a consequence, more convenient for people and companies with no legitimate purpose, to illegally invade a person's privacy and impermissibly gain access to their consumer credit histories.

2. While there is a legal duty for users of private, financial information to access that information only for legal reasons, the credit bureaus have a coinciding duty to make sure that widespread invasions of privacy do not occur by implementing specific procedures to prevent illegal, impermissible or capricious credit pulls. The improper access of a person's credit report is a substantial invasion of privacy and the use of this credit information can lead to one of the most pernicious phenomena of the electronic age, credit or identity theft.

3. At the heart of this lawsuit is the illegal use and access of Ms. Blake's credit reports by and the impermissible access to this private information granted to Granite Bay Acceptance, Inc., Automotive Product Consultants, Inc., NRRM, LLC, and Lease Maturity Services, LLC, by Trans Union LLC.

4. The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et. seq.*, restricts

access and use to and of credit reports.   This statute provides an exhaustive list of the permissible purposes and prescribes criminal penalties as well as civil for the unlawful access and use of these reports.

5. The FCRA regulates the conduct of users of this credit information, like entities like Granite Bay Acceptance, Inc., Automotive Product Consultants, Inc., NRRM, LLC, and Lease Maturity Services, LLC when they access reports from consumer reporting agencies.

6. These consumer reporting agencies must exercise the highest duty to prevent unauthorized access by their subscribers and prevent misuse of that information.

7. Credit reporting agencies like Trans Union LLC are subject to the FCRA when they allow for the impermissible access to consumer reports by users and are under the highest duty to prevent such illegal invasions of privacy.

8. The FCRA expressly provides consumers with a private cause of action against both the party illegally accessing the private information as well as against the credit reporting agency which willfully and/or negligently allowed the offending party to access the private information.   For violations of the privacy provisions of 15 U.S.C. §1681b, this impermissible access provision is enforceable via 15 U.S.C. §1681n for findings of willfulness and 15 U.S.C.

§1681o for findings of mere negligence.

## PARTIES

9.     The Plaintiff to this lawsuit are as follows:

    a.     Leilani Blake ("Ms. Blake"), who resides in Oakland County, Michigan.

10.    The Defendants to this lawsuit are as follows:

    a.     Trans Union, LLC ("Trans Union"), which is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. §1681 *et seq*;

    b.     Granite Bay Acceptance, Inc. ("Granite Bay"), a foreign corporation doing business in Michigan and which uses consumer reports as contemplated by FCRA, 15 U.S.C. §1681b;

    c.     Automotive Product Consultants, Inc. ("APC"), which is a Missouri corporation doing business in Michigan and which uses consumer reports as contemplated by FCRA, 15 U.S.C. §1681b;

    d.     NRRM, LLC ("NRRM"), which is a Missouri corporation doing business in Michigan and which uses consumer reports as contemplated by FCRA, 15 U.S.C. §1681b; and

    e.     Lease Maturity Services, LLC ("LMS"), which is an Illinois corporation doing business in Michigan and which uses consumer

reports as contemplated by FCRA, 15 U.S.C. §1681b.

## JURISDICTION

11.  The Court has federal question jurisdiction under 28 U.S.C. §1331, because

this action arises under 15 U.S.C. §1681 *et seq*.

## VENUE

12.  The transactions and occurrences that give rise to this action occurred in

Oakland County, Michigan.

13.  Ms. Blake resides in Oakland County, Michigan.

14.  Trans Union maintains its headquarters and corporate offices in Chicago,

Illinois.

15.  Granite Bay maintains its headquarters and corporate offices in Antioch,

Contra Costa County, California.

16.  APC maintains its headquarters and corporate offices in Chesterfield,

Missouri.

17.  NRRM maintains its headquarters and corporate offices in Saint Peters,

Missouri and/or St. Charles, Missouri.

18.  LMS maintains its headquarters and corporate offices in Deer Park, Illinois.

19.  Venue is proper in the Eastern District of Michigan because Granite Bay,

APC, NRRM, and LMS improperly accessed and used Plaintiff's consumer

reports, who is a Michigan resident residing in Oakland County which is in the Eastern District of Michigan.

## STATUTORY BACKGROUND OF THE FCRA

20.    The FCRA is a comprehensive scheme designed to safeguard the privacy of consumers' credit information.   It became effective in 1971 and has been in force since that date.

21.    The FCRA governs the reporting, use, and sale of information bearing on consumers' creditworthiness.   A key component of Congress' oversight is the requirement that consumer reporting agencies ("CRAs") may furnish consumer reports only for the purposes enumerated in the statute ("Permissible Purposes").   These Permissible Purposes include, among others, use of the information: (1) to verify the consumer's creditworthiness in connection with a credit transaction; (2) to verify eligibility for employment; (3) in connection with underwriting of insurance for the consumer; and (4) in connection with a transaction initiated by the consumer; as well as other legitimate business needs for the information.   15 U.S.C. §1681b(a)(1)-(6).

22.    Under the FCRA, consumers' private information bearing on creditworthiness may not be used without their consent for marketing or promotional purposes

other than those specifically enumerated in the FCRA for prescreened offers of credit.

23. In order to ensure that CRAs furnish consumer reports only in accordance with section 1681b, Congress established compliance procedures in 15 U.S.C. §1681e. Section 1681e requires CRAS to "maintain reasonable procedures designed to … limit the furnishing of consumer reports to the purposes listed under [§1681b]."

24. When a prospective user of a consumer report is "new," the CRA must make reasonable efforts to verify that user's identity and to verify that the user has a permissible use for obtaining a consumer report. If a CRA has reasonable grounds to believe a user will not use a report for a Permissible Purpose, it may not furnish a consumer report.

25. 15 U.S.C. §1681e(e) imposes requirements on persons who procure consumer reports for resale. It requires those persons to certify to the CRA that the end users of the reports are using them for a Permissible Purpose and also to establish reasonable procedures designed to ensure that the persons to whom they are reselling the consumer reports will use them for a Permissible Purpose.

26. 15 U.S.C. §1681b(f) prohibits users of consumer reports from obtaining them

7

for any purpose other than one permitted by the statute.

27.   15 U.S.C. §1681(q) imposes fines upon anyone who knowingly and willfully obtains consumer information from a CRA under false pretenses.

28.   15 U.S.C. §1681(n) imposes statutory damages for any willful violation of the statute.

29.   15 U.S.C. §1681(o) imposes statutory damages for any negligent violation of the statute.

## FACTUAL ALLEGATIONS

30.   Ms. Blake obtained a copy of her Trans Union consumer report ("the consumer report"), dated July 24, 2014.

31.   Upon reviewing her report, Ms. Blake saw that a consumer report containing her personal information had been obtained by "Granite Bay Acceptance," on December 15, 2013 with the address listed as "1781 Vineyard Dr. #222, Antioch, CA 94509," and a phone number of "(925) 779-1901."

32.   Ms. Blake also saw that a consumer report containing her personal information had been obtained by "Automative Product Consu,"[1] on June 15, 2014 with the address listed as "12825 Flushing Mead, Maryland Heig, MO 63043," and a phone number of "(636) 733-3317[2]."

---

1 Automotive Product Consultants, Inc.

2 This phone number appears on the BBB page for Automotive Product Consultants, with an address of 770 Spirit

33.    Ms. Blake also saw that a consumer report containing her personal information had been obtained by "NRRM LLC3," on April 30, 2014, with the address listed as "DBA: StopRepairBills.com, 339 Mid Rivers Mall Dr, Saint Peters, MO 63376," and a phone number of "(800) 436-3185."

34.    Ms. Blake also saw that a consumer report containing her personal information had been obtained by "Schaumburg Pre-Driven,"[4] on August 15, 2013, with the address listed as "650 W Gold Rd, Schaumburg, IL 60195, Phone number not available."

35.    Ms. Blake never requested credit or services from, or otherwise authorized her personal information to be accessed by Granite Bay.

36.    Ms. Blake never requested credit or services from, or otherwise authorized her personal information to be accessed by Automotive Product Consultants, Inc.

37.    Ms. Blake never requested credit or services from, or otherwise authorized her personal information to be accessed by NRRM, LLC.

38.    Ms. Blake never requested credit or services from, or otherwise authorized her personal information to be accessed by Lease Maturity Services, LLC.

---

of Saint Louis Blvd, Chesterfield MO 63005-1003, which is the same address for the resident agent of this entity recorded with the State of Missouri.
3 CarShields BBB Page, identifies among its alternate business names the following: StopRepairBills.com; NRRM LLC; Vehicle Protection Center; and Auto Service Agency.   CarShields website is "Powered by: NRRM LLC."
4  Lease Maturity Services, LLC

## PROMOTIONAL INQUIRIES AND PERMISSIBLE PURPOSE

39. Under the FCRA, consumers are entitled to obtain copies of their credit reports, including information about any businesses that have requested that consumer's report.

40. The Trans Union Credit Report of Ms. Blake lists Granite Bay, APC, NRRM, and LMS in the section labeled "Promotional Inquiries" implying that the inquiries were supposedly for promotional purposes meeting the requirements of 15 U.S.C. §1681b(c)(1)(B)(i).

41. Promotional inquiries are permissible under the FCRA only when the purchaser intends to make a "firm offer of credit or insurance" to consumers. 15 U.S.C. §1681b(c)(1)(B)(i).

42. As a prerequisite to obtaining that consumer report, Granite Bay, APC, NRRM, and LMS were required to certify to Trans Union—the credit reporting agency from which the report was obtained—that they each had a permissible purpose under the FCRA for accessing and using Ms. Blake's consumer reports.

## GRANITE BAY DID NOT HAVE A PERMISSIBLE PURPOSE

43. Granite Bay is a consumer report reseller.

44. To access consumer reports, including that of Ms. Blake, Granite Bay was

required to certify to Trans Union it had a Permissible Purpose recognized under the statute.

45. Further, as a consumer report reseller and pursuant to 15 U.S.C. §1681e(e), Granite Bay was required to certify to Trans Union that the "end-users" of the reports were using them for a Permissible Purpose and also to establish reasonable procedures designed to ensure that the persons to whom they were reselling the consumer reports would use them for a Permissible Purpose as set forth in 15 U.S.C. §1681b.

46. Granite Bay is in the business of assisting debt settlement companies in procuring consumer credit reports to further their debt settlement business purpose.

47. Debt settlement businesses' use of a consumer report is unrelated to a firm offer of credit or insurance.

48. Neither Granite Bay, nor the end-user to which it resold the consumer reports had a permissible purpose for the access and use of the reports as set forth in 15 U.S.C. §1681b.

49. Granite Bay did not establish reasonable procedures designed to ensure that the persons to whom they were reselling the consumer reports would use them for a Permissible Purpose as set forth in 15 U.S.C. §1681b.

## APC DID NOT HAVE A PERMISSIBLE PURPOSE

50.   APC sells and markets Vehicle Service Contracts.

51.   To access consumer reports, including that of Ms. Blake, APC was required to certify to Trans Union it had a Permissible Purpose recognized under the statute.

52.   APC "has mastered the difficult art of assimilating, analyzing and filtering data to effectively and profitably market Service Contracts directly to consumers."[5]

53.   Entities in the business of selling and/or marketing vehicle service contracts' use of consumer reports is unrelated to a firm offer of credit or insurance.

54.   APC did not have a permissible purpose for the access and use of the reports as set forth in 15 U.S.C. §1681b.

## NRRM DID NOT HAVE A PERMISSIBLE PURPOSE

55.   NRRM sells and markets Vehicle Service Contracts.

56.   To access consumer reports, including that of Ms. Blake, NRRM was required to certify to Trans Union it had a Permissible Purpose recognized under the statute.

57.   NRRM, is in the business of selling and marketing vehicle service contracts.

---

5 http://www.apcisg.com/BusinessDetail.aspx?section=businesses&app=40k35p3haky3d4mduahndf55&coID=1

58. NRRM is listed on the BBB page for CarShield[6] and identified as an alternate business name, among others including, StopRepairBills.com, Vehicle Protection Center, and Auto Service Agency.

59. The CarShield website discloses that it is "Powered by: NRRM LLC."[7]

60. According to Justia Trademarks [8], NRRM LLC Trademarks include: StopRepairBills.com; AutoGoldCard; Car Shield; CarShield.com; Carshield Field; and Carshield.

61. In 2012, NRRM LLC agreed to pay nearly $400,000 to settle with the Missouri Attorney General for running deceptive advertisements on radio and TV implying NRRM pays 100 percent of consumer repair claims.[9]

62. At the time, NRRM LLC was doing business as StopRepairBills.com and Vehicle Protection Center.

63. Entities in the business of selling and/or marketing vehicle service contracts' use of consumer reports is unrelated to a firm offer of credit or insurance.

64. NRRM did not have a permissible purpose for the access and use of the reports as set forth in 15 U.S.C. §1681b.

## LMS DID NOT HAVE A PERMISSIBLE PURPOSE

---

6 https://www.bbb.org/stlouis/business-reviews/auto-service-contract-companies/carshield-in-saint-peters-mo-310030296/reviews-and-complaints?section=reviews&reviewtype=negative
7 https://carshield.com/
8 https://trademarks.justia.com/owners/nrrm-llc-2207488/
9 https://patch.com/missouri/stpeters/st-peters-business-agrees-to-400-000-with-missouri-at391212f194

65. LMS sells and markets Vehicle Service Contracts.

66. To access consumer reports, including that of Ms. Blake, LMS was required to certify to Trans Union it had a Permissible Purpose recognized under the statute.

67. LMS, is in the business of selling and marketing vehicle service contracts.

68. Entities in the business of selling and/or marketing vehicle service contracts' use of consumer reports is unrelated to a firm offer of credit or insurance.

69. LMS did not have a permissible purpose for the access and use of the reports as set forth in 15 U.S.C. §1681b.

### TRANS UNION FAILED TO USE REASONABLE PROCEDURES TO ENSURE CONSUMERS' REPORTS WERE SOLD ONLY FOR PERMISSIBLE PURPOSES.

70. Trans Union, along with Equifax and Experian, is one of the three largest CRAs in the United States. Trans Union "is a global information solutions company that serves people, businesses and organizations around the world." Trans Union has "4,000 associates," serves "millions of consumers," across "68 offices," from "90,000 data sources," and over "1 billion consumer files."[10]

71. Trans Union is in the business of collecting consumer data and providing

---

10 https://www.TransUnion.com/resources/TransUnion/doc/csr/TransUnion_csr_report_2015.pdf.

consumer reports to businesses.

72.   Trans Union has implemented uniform policies, practices, and procedures to be followed in the preparation and delivery of consumer reports.

73.   As a prerequisite to obtaining Ms. Blake's Trans Union consumer report, Granite Bay was required to certify to Trans Union that it had a permissible purpose under the FCRA to access and use the consumer report.

74.   As a prerequisite to obtaining Ms. Blake's Trans Union consumer report for purposes of reselling, Granite Bay was required to certify to Trans Union that the "end-users" of the reports were using them for a Permissible Purpose and also to establish reasonable procedures designed to ensure that the persons to whom they were reselling the consumer reports would use them for a Permissible Purpose as set forth in 15 U.S.C. §1681b.

75.   As a prerequisite to obtaining Ms. Blake's Trans Union consumer report, APC, NRRM, and LMS were required to certify to Trans Union that they had a permissible purpose under the FCRA to access and use the consumer report.

76.   Granite Bay did not have a permissible purpose to access and use Ms. Blake's consumer report in accordance with 15 U.S.C. §1681b(a).

77.   The entities to which Granite Bay resold the consumer reports did not have a permissible purpose to access and use Ms. Blake's consumer report in

accordance with 15 U.S.C. §1681b(a).

78.   APC did not have a permissible purpose to access and use Ms. Blake's consumer report in accordance with 15 U.S.C. §1681b(a).

79.   NRRM did not have a permissible purpose to access and use Ms. Blake's consumer report in accordance with 15 U.S.C. §1681b(a).

80.   LMS did not have a permissible purpose to access and use Ms. Blake's consumer report in accordance with 15 U.S.C. §1681b(a).

81.   Trans Union provided Granite Bay with access to Ms. Blake's consumer report without a permissible purpose.

82.   Trans Union provided APC with access to Ms. Blake's consumer report without a permissible purpose.

83.   Trans Union provided NRRM with access to Ms. Blake's consumer report without a permissible purpose.

84.   Trans Union provided LMS with access to Ms. Blake's consumer report without a permissible purpose.

85.   Trans Union negligently failed to use reasonable procedures to ensure that Granite Bay was not using the information for impermissible purposes in violation of 15 U.S.C. §1681o.

86.   Trans Union negligently failed to use reasonable procedures to ensure that

APC was not using the information for impermissible purposes in violation of 15 U.S.C. §1681o.

87.    Trans Union negligently failed to use reasonable procedures to ensure that NRRM was not using the information for impermissible purposes in violation of 15 U.S.C. §1681o.

88.    Trans Union negligently failed to use reasonable procedures to ensure that LMS was not using the information for impermissible purposes in violation of 15 U.S.C. §1681o.

89.    As a direct and proximate cause, Ms. Blake has suffered unwarranted invasions of their privacy, which may expose Ms. Blake to additional improper uses of her consumer reports or her personal identification information.

## TRANS UNION HAS BEEN THE SUBJECT OF FEDERAL TRADE COMMISSION ENFORCEMENT ACTION FOR FCRA VIOLATIONS SIMILAR TO THOSE THAT MS. BLAKE SUFFERED.

90.    Trans Union is no stranger to allegations similar to those that Ms. Blake brings here.   In 1994, the Federal Trade Commission (the "FTC" or "the Commission") affirmed a decision against Trans Union for selling lists of consumers, based on information in Trans Union's consumer reporting database, for marketing purposes.

91. On April 13, 2001, The D.C. Circuit Court of Appeals issued an opinion upholding the Commission's decision. *See Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809 (D.C. Cir. 2001). Trans Union ultimately agreed to pay a $1 million civil penalty to the FTC to settle the charges.[11]

92. Trans Union committed the exact same violations here that caused the FTC to scrutinize its business practices and, ultimately, collect the $1 million payment.

### DEFENDANTS ACTED WILLFULLY

93. As a nationwide CRA, Trans Union was well aware it was subject to the mandates and requirements of the FCRA and knew or should have known about its legal obligations under the FCRA.  These obligations are well-established in the plain language of the FCRA and in case law applying those provisions.

94. Trans Union obtained or had available substantial written materials that apprised it of its duties under the FCRA.  Any consumer reporting agency knows about or can easily discover these mandates.

---

11 Federal Trade Commission, Nation's Big Three Consumer Reporting Agencies Agree to Pay $2.5 Million to Settle FTC Charges of Violating Fair Credit Reporting Act (January 13, 2000), *available at* https://www.ftc.gov/news-events/press-releases/2000/01/nations-big-three-consumer-reporting-agencies-agree-pay-25https://www.ftc.gov/news-events/press-releases/2000/01/nations-big-three-consumer-reporting-agencies-agree-pay-25

95.     Despite at least the constructive knowledge of these legal obligations, Trans Union acted consciously in breaching its known duties and depriving Ms. Blake of her rights under the FCRA.

96.     Trans Union knew or should have known that the FCRA requires consumer reporting agencies such as Trans Union to "maintain reasonable procedures designed to avoid violations...[§1681b] of [the FCRA]" and to ensure those procedures "require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose" under 15 U.S.C. §1681e(a).

97.     Trans Union knew or should have known that it was required, under 15 U.S.C. §1681e(a)(1) to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report," and (2) not to furnish a consumer report to any person if it had "reasonable grounds for believing that the consumer report will not be used" for a Permissible Purpose.

98.     Trans Union should have easily discovered, with minimal time and effort, that Granite Bay, APC, NRRM, and LMS were not using the consumer reports that Trans Union generated and sold for any FCRA Permissible Purpose.

99.   Trans Union should have easily discovered, with minimal time and effort, that the end-users to which Granite Bay was reselling the consumer reports were not using the consumer reports that Trans Union generated and sold for any FCRA Permissible Purpose.

100.  Trans Union acted willfully by intentionally ignoring its obligations under 15 U.S.C. §1681e(a) in failing to properly vet, inquire into, and discover the true intent and false representations of Granite Bay, APC, NRRM, and LMS.

101.  It was the practice of Granite Bay to:

    a.   Access and use consumer reports for non-permissible purposes;

    b.   Use its computer systems to automatically request consumer reports;

    c.   Access those reports under a blanket certification that the reports would only be used for a permissible purpose; and

    d.   Assist debt settlement companies by securing those consumer reports for those debt settlement companies for marketing purposes.

102.  It was the practice of APC to:

    a.   Access and use consumer reports for non-permissible purposes;

    b.   Use its computer systems to automatically request consumer reports;

    c.   Access those reports under a blanket certification that the reports would only be used for a permissible purpose; and

    d.     Use those consumer reports to market Vehicle Service Contracts and for other marketing purposes.

103. It was the practice of NRRM to:

    a.     Access and use consumer reports for non-permissible purposes;

    b.     Use its computer systems to automatically request consumer reports;

    c.     Access those reports under a blanket certification that the reports would only be used for a permissible purpose; and

    d.     Use those consumer reports to market Vehicle Service Contracts and for other marketing purposes.

104. It was the practice of LMS to:

    a.     Access and use consumer reports for non-permissible purposes;

    b.     Use its computer systems to automatically request consumer reports;

    c.     Access those reports under a blanket certification that the reports would only be used for a permissible purpose; and

    d.     Use those consumer reports to market Vehicle Service Contracts and for other marketing purposes.

105. Granite Bay acted willfully by intentionally making false representations to Trans Union regarding its purpose in purchasing consumer reports.

106. APC acted willfully by intentionally making false representations to Trans

Union regarding its purpose in purchasing consumer reports.

107. NRRM acted willfully by intentionally making false representations to Trans Union regarding its purpose in purchasing consumer reports.

108. LMS acted willfully by intentionally making false representations to Trans Union regarding its purpose in purchasing consumer reports.

109. As a result of these FCRA violations, Defendants are liable to Ms. Blake for statutory damages from $100 to $1000 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2), as well as attorneys' fees and costs pursuant to Sections 1681n and 1681o.

## COUNT I – VIOLATIONS OF 15 U.S.C. §§ 1681B, 1681E(A) (TRANS UNION)

110. Ms. Blake incorporates the preceding allegations by reference.

111. Trans Union sold the consumer reports of Ms. Blake to Granite Bay, APC, NRRM, and LMS in violation of the FCRA, 15 U.S.C. §§ 1681b(a) and 1681e(a).

112. Trans Union knew or should have known that the prospective use of reports by Granite Bay, APC, NRRM, and LMS was not for a Permissible Purpose under §1681b. As described above, even the most cursory investigation would have revealed this, and Trans Union thus had reasonable grounds for believing the consumer reports would not be used for a Permissible Purpose under

§1681b.

113.   Trans Union failed to implement and maintain reasonable procedures to limit the provision of the consumer reports of Ms. Blake to a section 1681b Permissible Purpose.

114.   Trans Union failed to make a reasonable effort to verify the identities of the entities to which Granite Bay was reselling the reports and the uses certified by Granite Bay prior to furnishing the consumer reports of Ms. Blake.

115.   Trans Union failed to make a reasonable effort to verify the uses certified by APC, NRRM, and LMS prior to furnishing the consumer reports of Ms. Blake.

116.   Trans Union willfully and recklessly disregarded its duties under 15 U.S.C. §§ 1681b and 1681e(a) to prevent misappropriation and misuse of the private and protected credit information of Ms. Blake. Even a minimal level of diligence would have discovered that The Users were not using the information for a Permissible Purpose.

117.   Trans Union's failure resulted in the unlawful use of Ms. Blakes' credit information: to target Plaintiffs for direct marketing and/or other impermissible marketing purposes.

118.   Trans Union is liable to Ms. Blake for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

## <u>COUNT II – VIOLATIONS OF 15 U.S.C. §§ 1681b, 1681b(f)</u> <u>(GRANITE BAY, APC, NRRM, AND LMS)</u>

119.  Ms. Blake incorporates the preceding allegations by reference.

120.  Granite Bay purchased from Trans Union consumer reports containing the personal information of Ms. Blake.

121.  APC purchased from Trans Union consumer reports containing the personal information of Ms. Blake.

122.  NRRM purchased from Trans Union consumer reports containing the personal information of Ms. Blake.

123.  LMS purchased from Trans Union consumer reports containing the personal information of Ms. Blake.

124.  15 U.S.C. §1681b(f) prohibits persons from using or obtaining consumer reports in the absence of a Permissible Purpose.

125.  The only Permissible Purpose for using consumer reports like those obtained by Granite Bay, APC, NRRM, and LMS regarding consumers with whom they have no business relationship is to make a "firm offer of credit or insurance."

126.  A "firm offer" is one that will be honored (subject to certain exceptions) if the consumer continues to meet the pre-selected criteria used to select them for the offer. 15 U.S.C. §1681a(1).

127.  Granite Bay is not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

128.  APC is not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

129.  NRRM is not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

130.  LMS is not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

131.  Granite Bay willfully and recklessly disregarded its duties under 15 U.S.C. §1681b(f) to obtain a consumer report only for a Permissible Purpose.

132.  APC willfully and recklessly disregarded its duties under 15 U.S.C. §1681b(f) to obtain a consumer report only for a Permissible Purpose.

133.  NRRM willfully and recklessly disregarded its duties under 15 U.S.C. §1681b(f) to obtain a consumer report only for a Permissible Purpose.

134.  LMS willfully and recklessly disregarded its duties under 15 U.S.C. §1681b(f) to obtain a consumer report only for a Permissible Purpose.

135.  Granite Bays, APCs, NRRMs, and LMSs failure resulted in the unlawful use of Ms. Blake's credit information to target her for debt relief services, auto service contract telemarketing or other impermissible purposes.

136.   Granite Bay, APC, NRRM, and LMS are liable to Ms. Blake for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

## COUNT III – VIOLATIONS OF 15 U.S.C. §1681e(e)
## (GRANITE BAY)

137.   Ms. Blake incorporates the preceding allegations by reference.

138.   Granite Bay purchased and resold from Trans Union consumer reports containing the personal information of Ms. Blake.

139.   15 U.S.C. §1681e(e)(2)(A) requires a reseller to establish and comply with reasonable procedures designed to ensure that the report (or information) is resold only for a purpose for which the report may be furnished under 15 U.S.C. §1681b.

140.   15 U.S.C. §1681e(e)(2)(B) requires a reseller, before reselling the report, to make reasonable efforts to verify the identifications and certifications made under 15 U.S.C. §1681e(e)(2)(A).

141.   Granite Bay purchases from Trans Union consumer reports that it then resells to debt settlement companies to further their business and marketing efforts.

142.   The end-users to which Granite Bay resells the Trans Union consumer reports do not have a permissible purpose pursuant to 15 U.S.C. §1681b.

143.   Granite Bay did not establish and comply with reasonable procedures

designed to ensure that the report (or information) is resold only for a permissible purpose pursuant to 15 U.S.C. §1681b.

144.   Granite Bay did not make reasonable efforts to verify the identifications and certifications, if any were made, of the end-users pursuant to 15 U.S.C. §1681e(e)(2)(B).

145.   Granite Bay willfully and recklessly disregarded its duties under 15 U.S.C. §1681e(e) to obtain and resell a consumer report to an end-user to be used only for a Permissible Purpose.

146.   Granite Bays failure resulted in the unlawful use of Ms. Blake's credit information to target her for debt relief services or other impermissible purposes.

147.   Granite Bay is liable to Ms. Blake for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

## COUNT IV – VIOLATIONS OF 15 U.S.C. §1681q (GRANITE BAY, APC, NRRM, AND LMS)

148.   Ms. Blake incorporates the preceding allegations by reference.

149.   Granite Bay obtained the consumer reports of Ms. Blake under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

150.   APC obtained the consumer reports of Ms. Blake under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

151.   NRRM obtained the consumer reports of Ms. Blake under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

152.   LMS obtained the consumer reports of Ms. Blake under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

153.   Ms. Blake was injured by this invasion of their privacy and suffered damages as a result.

## JURY DEMAND

154.   Ms. Blake demands trial by jury.

## RELIEF REQUESTED

155.   *ACCORDINGLY, Ms. Blake respectfully requests that this Court Grant the following relief:*

a.   Statutory damages under 15 U.S.C. §1681n

b.   Punitive damages;

c.   Reasonable attorney's fees;

d.   Costs of this proceeding;

e.   Equitable or declaratory relief; and

f.   All other relief to which Ms. Blake may be justly entitled.

Respectfully Submitted,

By:   s/ Sylvia S. Bolos

Sylvia S. Bolos P78715
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney for Leilani Blake
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
PHONE: (248) 208-8864
SylviaB@MichiganConsumerLaw.com

Dated: February 2, 2018