UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

LEILANI BLAKE,

     Plaintiff,

-vs-

                                Case No. 2:18-cv-10406-MAG-APP
                                Judge Mark A. Goldsmith
                                Magistrate Judge: Anthony P. Patti

TRANSUNION, LLC,
GRANITE BAY ACCEPTANCE, INC.,
AUTOMOTIVE PRODUCT CONSULTANTS, INC.,
     *d/b/a Automotive Product Consu,*
     *d/b/a APC Integrated Services Group, Inc.,*
NRRM, LLC,
     *d/b/a StopRepairBills.com,*
     *d/b/a CarShield LLC,*
LEASE MATURITY SERVICES, LLC,
     *d/b/a Schaumburg Pre-Driven,*
     *d/b/a Schaumburg Pre Driven, LLC, and*
     *d/b/a Schaumburg Pre Driven,*

     Defendants.

_____/

## DEFENDANT AUTOMOTIVE PRODUCT CONSULTANTS, INC.'S ANSWER TO COMPLAINT AND JURY DEMAND WITH AFFIRMATIVE DEFENSES

     Defendant Automotive Product Consultants, Inc. ("APC"), by and through its counsel, Jaffe Raitt Heuer & Weiss, P.C., states for its Answer and Affirmative Defenses to Plaintiff's Complaint and Jury Demand as follows:

1.      Personal financial information may reveal the most private details of a consumer's lifestyle or mode of living, and any improper use constitutes an invasion of privacy of the consumer.  As the banking and credit industries have developed systems and computer databases for legitimate, authorized and convenient access to this private, financial information, it has become, as a consequence, more convenient for people and companies with no legitimate purpose, to illegally invade a person's privacy and impermissibly gain access to their consumer credit histories.

**ANSWER:**  As Plaintiff's allegations are stated and absent a proper definition of the terms employed, APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to APC, which has the effect of a denial under Rule 8(b)(5).  APC states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule (8)(b)(5).

2.      While there is a legal duty for users of private, financial information to access that information only for legal reasons, the credit bureaus have a coinciding duty to make sure that widespread invasions of privacy do not occur by implementing specific procedures to prevent illegal, impermissible or capricious credit pulls.  The improper access of a person's credit report is a substantial invasion of privacy and the use of this credit information can lead to one of the most pernicious phenomena of the electronic age, credit or identity theft.

2

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and so stating, denies them.

3.      At the heart of this lawsuit is the illegal use and access of Ms. Blake's credit reports by and the impermissible access to this private information granted to Granite Bay Acceptance, Inc., Automotive Product Consultants, Inc., NRRM, LLC, and Lease Maturity Services, LLC, by Trans Union LLC.

**ANSWER:**  APC denies that it violated FCRA (or any other law). APC denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against APC. APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

4.      The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et. seq., restricts access and use to and of credit reports.  This statute provides an exhaustive list of the permissible purposes and prescribes criminal penalties as well as civil for the unlawful access and use of these reports.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

5.      The FCRA regulates the conduct of users of this credit information, like entities like Granite Bay Acceptance, Inc., Automotive Product Consultants, Inc., NRRM, LLC, and Lease Maturity Services, LLC when they access reports from consumer reporting agencies.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

6.     These consumer reporting agencies must exercise the highest duty to prevent unauthorized access by their subscribers and prevent misuse of that information.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

7.     Credit reporting agencies like Trans Union LLC are subject to the FCRA when they allow for the impermissible access to consumer reports by users and are under the highest duty to prevent such illegal invasions of privacy.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

8.     The FCRA expressly provides consumers with a private cause of action against both the party illegally accessing the private information as well as against the credit reporting agency which willfully and/or negligently allowed the offending party to access the private information.  For violations of the privacy provisions of 15 U.S.C. §1681b, this impermissible access provision is enforceable via 15 U.S.C. §1681n for findings of willfulness and 15 U.S.C. §1681o for findings of mere negligence.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## PARTIES

9.   The Plaintiff to this lawsuit are as follows:

a.   Leilani Blake ("Ms. Blake"), who resides in Oakland County, Michigan.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

10.   The Defendants to this lawsuit are as follows:

a.   Trans Union, LLC ("Trans Union"), which is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. §1681 *et seq*;

b.   Granite Bay Acceptance, Inc. ("Granite Bay"), a foreign corporation doing business in Michigan and which uses consumer reports as contemplated by FCRA, 15 U.S.C. §1681b;

c.   Automotive Product Consultants, Inc. ("APC"), which is a Missouri corporation doing business in Michigan and which uses consumer reports as contemplated by FCRA, 15 U.S.C. §1681b;

d.   NRRM, LLC ("NRRM"), which is a Missouri corporation doing business in Michigan and which uses consumer reports as contemplated by FCRA, 15 U.S.C. §1681b; and

e.   Lease Maturity Services, LLC ("LMS"), which is an Illinois corporation doing business in Michigan and which uses consumer reports as contemplated by FCRA, 15 U.S.C. §1681b.

**ANSWER:** APC admits that it is a Missouri corporation which makes proper and legal use of consumer reports as contemplated by FCRA. Except as expressly admitted herein, the remaining allegations of this paragraph are denied.

## JURISDICTION

11.   The Court has federal question jurisdiction under 28 U.S.C. §1331, because this action arises under 15 U.S.C. §1681 *et seq.*

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## VENUE

12.   The transactions and occurrences that give rise to this action occurred in Oakland County, Michigan.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

6

13.     Ms. Blake resides in Oakland County, Michigan.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

14.     Trans Union maintains its headquarters and corporate offices in Chicago, Illinois.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

15.     Granite Bay maintains its headquarters and corporate offices in Antioch, Contra Costa County, California.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

16.     APC maintains its headquarters and corporate offices in Chesterfield, Missouri.

**ANSWER:** APC admits that it maintains its corporate offices and headquarters in St. Louis County, Missouri. Except as expressly admitted the remaining allegations of this paragraph are denied.

17.     NRRM maintains its headquarters and corporate offices in Saint Peters, Missouri and/or St. Charles, Missouri.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

18.     LMS maintains its headquarters and corporate offices in Deer Park, Illinois.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

19.     Venue is proper in the Eastern District of Michigan because Granite Bay, APC, NRRM, and LMS improperly accessed and used Plaintiff's consumer reports, who is a Michigan resident residing in Oakland County which is in the Eastern District of Michigan.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## STATUTORY BACKGROUND OF THE FCR

20.     The FCRA is a comprehensive scheme designed to safeguard the privacy of consumers' credit information.  It became effective in 1971 and has been in force since that date.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

21.    The FCRA governs the reporting, use, and sale of information bearing on consumers' creditworthiness.  A key component of Congress' oversight is the requirement that consumer reporting agencies ("CRAs") may furnish consumer reports only for the purposes enumerated in the statute ("Permissible Purposes"). These Permissible Purposes include, among others, use of the information:  (1) to verify the consumer's creditworthiness in connection with a credit transaction; (2) to verify eligibility for employment; (3) in connection with underwriting of insurance for the consumer; and (4) in connection with a transaction initiated by the consumer; as well as other legitimate business needs for the information.  15 U.S.C. §1681b(a)(1)-(6).

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

22.    Under the FCRA, consumers' private information bearing on creditworthiness may not be used without their consent for marketing or promotional purposes other than those specifically enumerated in the FCRA for prescreened offers of credit.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

23.    In order to ensure that CRAs furnish consumer reports only in accordance with section 1681b, Congress established compliance procedures in 15 U.S.C. §1681e.  Section 1681e requires CRAS to "maintain reasonable procedures designed to ... limit the furnishing of consumer reports to the purposes listed under [§1681b]."

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

24.    When a prospective user of a consumer report is "new," the CRA must make reasonable efforts to verify that user's identity and to verify that the user has a permissible use for obtaining a consumer report.  If a CRA has reasonable grounds to believe a user will not use a report for a Permissible Purpose, it may not furnish a consumer report.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

25.    15 U.S.C. §1681e(e) imposes requirements on persons who procure consumer reports for resale.  It requires those persons to certify to the CRA that the end users of the reports are using them for a Permissible Purpose and also to establish reasonable procedures designed to ensure that the persons to whom they are reselling the consumer reports will use them for a Permissible Purpose.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

26.     15 U.S.C. §1681b(f) prohibits users of consumer reports from obtaining them for any purpose other than one permitted by the statute.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

27.     15 U.S.C. §1681(q) imposes fines upon anyone who knowingly and willfully obtains consumer information from a CRA under false pretenses.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

28.     15 U.S.C. §1681(n) imposes statutory damages for any willful violation of the statute.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

29.     15 U.S.C. §1681(o) imposes statutory damages for any negligent violation of the statute.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## FACTUAL ALLEGATIONS

30.     Ms. Blake obtained a copy of her Trans Union consumer report ("the consumer report"), dated July 24, 2014.

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

31.     Upon reviewing her report, Ms. Blake saw that a consumer report containing her personal information had been obtained by "Granite Bay Acceptance," on December 15, 2013 with the address listed as "1781 Vineyard Dr. #222, Antioch, CA 94509," and a phone number of "(925) 779-1901."

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule8(b)(5).

32.     Ms. Blake also saw that a consumer report containing her personal information had been obtained by "Automative Product Consu,"[1] on June 15, 2014 with the address listed as "12825 Flushing Mead, Maryland Heig, MO 63043," and a phone number of "(636) 733-3317[2]."

---

[1] Automotive Product Consultants, Inc.

[2] This phone number appears on the BBB page for Automotive Product Consultants, with an address of 770 Spirit of Saint Louis Blvd, Chesterfield, MO 63005-1003, which is the same address for the resident agent of this entity recorded with the State of Missouri.

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

33.     Ms. Blake also saw that a consumer report containing her personal information had been obtained by "NRRM LLC[3]," on April 30, 2014, with the address listed as "DBA: StopRepairBills.com, 339 Mid Rivers Mall Dr, Saint Peters, MO 63376," and a phone number of "(800) 436-3185."

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

34.     Ms. Blake also saw that a consumer report containing her personal information had been obtained by "Schaumburg Pre-Driven,"[4] on August 15, 2013, with the address listed as "650 W Gold Rd, Schaumburg, IL 60195, Phone number not available."

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

---

[3] CarShields BBB Page, identifies among its alternate business names the following: StopRepairBills.com; NRRM LLC; Vehicle Protection Center; and Auto Service Agency. CarShields website is "Powered by: NRRM LLC."
[4] Lease Maturity Services, LLC

35.     Ms. Blake never requested credit or services from, or otherwise authorized her personal information to be accessed by Granite Bay.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

36.     Ms. Blake never requested credit or services from, or otherwise authorized her personal information to be accessed by Automotive Product Consultants, Inc.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

37.     Ms. Blake never requested credit or services from, or otherwise authorized her personal information to be accessed by NRRM, LLC.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

38.     Ms. Blake never requested credit or services from, or otherwise authorized her personal information to be accessed by Lease Maturity Services, LLC.

**ANSWER:** APC states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

## PROMOTIONAL INQUIRIES AND PERMISSIBLE PURPOSE

39.     Under the FCR1A, consumers are entitled to obtain copies of their credit reports, including information about any businesses that have requested that consumer's report.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

40.     The Trans Union Credit Report of Ms. Blake lists Granite Bay, APC, NRRM, and LMS in the section labeled "Promotional Inquiries" implying that the inquiries were supposedly for promotional purposes meeting the requirements of 15 U.S.C. §1681b(c)(1)(B)(i).

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

41.     Promotional inquiries are permissible under the FCRA only when the purchaser intends to make a "firm offer of credit or insurance" to consumers.  15 U.S.C. §1681b(c)(1)(B)(i).

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

42.     As a prerequisite to obtaining that consumer report, Granite Bay, APC, NRRM, and LMS were required to certify to Trans Union—the credit reporting agency from which the report was obtained—that they each had a permissible purpose under the FCRA for accessing and using Ms. Blake's consumer reports.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## GRANITE BAY DID NOT HAVE A PERMISSIBLE PURPOSE

43.     Granite Bay is a consumer report reseller.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

44.     To access consumer reports, including that of Ms. Blake, Granite Bay was required to certify to Trans Union it had a Permissible Purpose recognized under the statute.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

45.     Further, as a consumer report reseller and pursuant to 15 U.S.C. §1681e(e), Granite Bay was required to certify to Trans Union that the "end-users"

of the reports were using them for a Permissible Purpose and also to establish reasonable procedures designed to ensure that the persons to whom they were reselling the consumer reports would use them for a Permissible Purpose as set forth in 15 U.S.C. §1681b.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

46. Granite Bay is in the business of assisting debt settlement companies in procuring consumer credit reports to further their debt settlement business purpose.

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

47. Debt settlement businesses' use of a consumer report is unrelated to a firm offer of credit or insurance.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed by APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to APC, which has the effect of a denial under Rule 8(b)(5). APC states that it lacks knowledge or information to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

48.     Neither Granite Bay, nor the end-user to which it resold the consumer reports had a permissible purpose for the access and use of the reports as set forth in 15 U.S.C. §1681b.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

49.     Granite Bay did not establish reasonable procedures designed to ensure that the persons to whom they were reselling the consumer reports would use them for a Permissible Purpose as set forth in 15 U.S.C. §1681b.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## APC DID NOT HAVE A PERMISSIBLE PURPOSE

50.     APC sells and markets Vehicle Service Contracts.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed, APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to APC, which has the effect of a denial under Rule 8(b)(5).

51.  To access consumer reports, including that of Ms. Blake, APC was required to certify to Trans Union it had a Permissible Purpose recognized under the statute.

**ANSWER:**  As Plaintiff's allegations are stated and absent a proper definition of the terms employed, APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to APC, which has the effect of a denial under Rule 8(b)(5).  Any requirements of Trans Union were met by APC.

52.  APC "has mastered the difficult art of assimilating, analyzing and filtering data to effectively and profitably market Service Contracts directly to consumers."[5]

**ANSWER:** APC states that the quote in the paragraph is contained on its website. Except as expressly admitted any other allegations of this paragraph are denied.

53.  Entities in the business of selling and/or marketing vehicle service contracts' use of consumer reports is unrelated to a firm offer of credit or insurance.

**ANSWER:**  APC denies the allegations of this paragraph and each of them.

54.  APC did not have a permissible purpose for the access and use of the reports as set forth in 15 U.S.C. §1681b.

---

[5] http://www.apcisg.com/BusinessDetail.aspx?section=businesses&app=40k35p3haky3d4mdualndf55&coID=1

**ANSWER:** APC denies the allegations of this paragraph and each of them.

### NRRM DID NOT HAVE A PERMISSIBLE PURPOSE

55.    NRRM sells and markets Vehicle Service Contracts.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

56.    To access consumer reports, including that of Ms. Blake, NRRM was required to certify to Trans Union it had a Permissible Purpose recognized under the statute.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

57.    NRRM, is in the business of selling and marketing vehicle service contracts.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

58. NRRM is listed on the BBB page for CarShield[6] and identified as an alternate business name, among others including, StopRepairBills.com, Vehicle Protection Center, and Auto Service Agency.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

59. The CarShield website discloses that it is "Powered by: NRRM LLC."[7]

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

60. According to Justia Trademarks[8], NRRM LLC Trademarks include: StopRepairBills.com; AutoGoldCard; Car Shield; CarShield.com; Carshield Field; and Carshield.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against

---

6    https://www.bbb.org/stlouis/business-reviews/auto-service-contract-companies/carshield-in-saint-peters-mo-310030296/reviews-and-complaints?section=reviews&reviewtype=negative
7 https://carshield.com
8 https://trademarks.justia.com/owners/nrrm-llc-2207488/

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

61.     In 2012, NRRM LLC agreed to pay nearly $400,000 to settle with the Missouri Attorney General for running deceptive advertisements on radio and TV implying NRRM pays 100 percent of consumer repair claims.[9]

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

62.     At the time, NRRM LLC was doing business as StopRepairBills.com and Vehicle Protection Center.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

63.     Entities in the business of selling and/or marketing vehicle service contracts' use of consumer reports is unrelated to a firm offer of credit or insurance.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

---

[9] https://patch.com/missouri/stpeters/st-peters-business-agrees-to-400-000-with-missouri-at391212f194

64.    NRRM did not have a permissible purpose for the access and use of the reports as set forth in 15 U.S.C. §1681b.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## LMS DID NOT HAVE A PERMISSIBLE PURPOSE

65.    LMS sells and markets Vehicle Service Contracts.

**ANSWER:** APC states that it lacks sufficient knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

66.    To access consumer reports, including that of Ms. Blake, LMS was required to certify to Trans Union it had a Permissible Purpose recognized under the statute.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

67.    LMS, is in the business of selling and marketing vehicle service contracts.

**ANSWER:** APC states that it lacks sufficient knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

68.   Entities in the business of selling and/or marketing vehicle service contracts' use of consumer reports is unrelated to a firm offer of credit or insurance

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

69.   LMS did not have a permissible purpose for the access and use of the reports as set forth in 15 U.S.C. §1681b.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## TRANS UNION FAILED TO USE REASONABLE PROCEDURES TO ENSURE CONSUMERS' REPORTS WERE SOLD ONLY FOR PERMISSIBLE PURPOSES.

70.   Trans Union, along with Equifax and Experian, is one of the three largest CRAs in the United States.  Trans Union "is a global information solutions company that serves people, businesses and organizations around the world." Trans Union has "4,000 associates," serves "millions of consumers," across "68 offices," from "90,000 data sources," and over "1 billion consumer files."[10]

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

---

[10] https://www.TransUnion.com/resources/TransUnion/doc/csr/TransUnion_csr_report_2015.pdf

24

71.     Trans Union is in the business of collecting consumer data and providing consumer reports to businesses.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

72.     Trans Union has implemented uniform policies, practices, and procedures to be followed in the preparation and delivery of consumer reports.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

73.     As a prerequisite to obtaining Ms. Blake's Trans Union consumer report, Granite Bay was required to certify to Trans Union that it had a permissible purpose under the FCRA to access and use the consumer report.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

74.     As a prerequisite to obtaining Ms. Blake's Trans Union consumer report for purposes of reselling, Granite Bay was required to certify to Trans Union that the "end-users" of the reports were using them for a Permissible Purpose and also to

establish reasonable procedures designed to ensure that the persons to whom they were reselling the consumer reports would use them for a Permissible Purpose as set forth in 15 U.S.C. §1681b.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

75.    As a prerequisite to obtaining Ms. Blake's Trans Union consumer report, APC, NRRM, and LMS were required to certify to Trans Union that they had a permissible purpose under the FCRA to access and use the consumer report.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed, APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to APC, which has the effect of a denial under Rule 8(b)(5). APC states that at all times it complied with any requirements requested by Trans Union.

76.    Granite Bay did not have a permissible purpose to access and use Ms. Blake's consumer report in accordance with 15 U.S.C. §1681b(a).

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

77.    The entities to which Granite Bay resold the consumer reports did not have a permissible purpose to access and use Ms. Blake's consumer report in accordance with 15 U.S.C. §1681b(a).

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

78.    APC did not have a permissible purpose to access and use Ms. Blake's consumer report in accordance with 15 U.S.C. §1681b(a).

**ANSWER:** APC denies the allegations of this paragraph.

79.    NRRM did not have a permissible purpose to access and use Ms. Blake's consumer report in accordance with 15 U.S.C. §1681b(a).

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

80.    LMS did not have a permissible purpose to access and use Ms. Blake's consumer report in accordance with 15 U.S.C. §1681b(a).

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

81.    Trans Union provided Granite Bay with access to Ms. Blake's consumer report without a permissible purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

82.    Trans Union provided APC with access to Ms. Blake's consumer report without a permissible purpose.

**ANSWER:**  APC denies the allegations contained in this paragraph.

83.    Trans Union provided NRRM with access to Ms. Blake's consumer report without a permissible purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

84.    Trans Union provided LMS with access to Ms. Blake's consumer report without a permissible purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

85.     Trans Union negligently failed to use reasonable procedures to ensure that Granite Bay was not using the information for impermissible purposes in violation of 15 U.S.C. §1681o.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

86.     Trans Union negligently failed to use reasonable procedures to ensure that APC was not using the information for impermissible purposes in violation of 15 U.S.C. §1681o.

**ANSWER:** APC denies the allegations contained in this paragraph.

87.     Trans Union negligently failed to use reasonable procedures to ensure that NRRM was not using the information for impermissible purposes in violation of 15 U.S.C. §1681o.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

88.     Trans Union negligently failed to use reasonable procedures to ensure that LMS was not using the information for impermissible purposes in violation of 15 U.S.C. §1681o.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

89.     As a direct and proximate cause, Ms. Blake has suffered unwarranted invasions of their privacy, which may expose Ms. Blake to additional improper uses of her consumer reports or her personal identification information.

**ANSWER:** APC denies the allegations contained in this paragraph.

## TRANS UNION HAS BEEN THE SUBJECT OF FEDERAL TRADE COMMISSION ENFORCEMENT ACTION FOR FCRA VIOLATIONS SIMILAR TO THOSE THAT MS. BLAKE SUFFERED.

90.     Trans Union is no stranger to allegations similar to those that Ms. Blake brings here.   In 1994, the Federal Trade Commission (the "FTC" or "the Commission") affirmed a decision against Trans Union for selling lists of consumers, based on information in Trans Union's consumer reporting database, for marketing purposes.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

91.     On April 13, 2001, The D.C. Circuit Court of Appeals issued an opinion upholding the Commission's decision. *See Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809 (D.C. Cir. 2001). Trans Union ultimately agreed to pay a $1 million civil penalty to the FTC to settle the charges.[11]

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

92.     Trans Union committed the exact same violations here that caused the FTC to scrutinize its business practices and, ultimately, collect the $1 million payment.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

---

[11] Federal Trade Commission, Nation's Big Three Consumer Reporting Agency Agree to Pay $2.5 Million to Settle FTC Charges of Violating Fair Credit Reporting Act (January 13, 2000), *available at* https://www.ftc.gov/news-events/press-releases/2000/01/nations-big-three-consumer-reporting-agencies-agree-pay-25

## DEFENDANTS ACTED WILLFULLY

93.     As a nationwide CRA, Trans Union was well aware it was subject to the mandates and requirements of the FCRA and knew or should have known about its legal obligations under the FCRA.  These obligations are well- established in the plain language of the FCRA and in case law applying those provisions.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

94.     Trans Union obtained or had available substantial written materials that apprised it of its duties under the FCRA.  Any consumer reporting agency knows about or can easily discover these mandates.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

95.     Despite at least the constructive knowledge of these legal obligations, Trans Union acted consciously in breaching its known duties and depriving Ms. Blake of her rights under the FCRA.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

96.     Trans Union knew or should have known that the FCRA requires consumer reporting agencies such as Trans Union to "maintain reasonable procedures designed to avoid violations...[§1681b] of [the FORA]" and to ensure those procedures "require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose" under 15 U.S.C. §1681e(a).

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

97.     Trans Union knew or should have known that it was required, under 15 U.S.C. §1681e(a)(1) to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report," and (2) not to furnish a consumer report to any person if it had "reasonable grounds for believing that the consumer report will not be used" for a Permissible Purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

98.     Trans Union should have easily discovered, with minimal time and effort, that Granite Bay, APC, NRRM, and LMS were not using the consumer reports that Trans Union generated and sold for any FCRA Permissible Purpose.

**ANSWER:**  APC states that as to it, consumer reports were being used for a FCRA permissible purpose constituting an offer of insurance and/or credit. APC denies that the remaining statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

99.     Trans Union should have easily discovered, with minimal time and effort, that the end-users to which Granite Bay was reselling the consumer reports were not using the consumer reports that Trans Union generated and sold for any FCRA Permissible Purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

100. Trans Union acted willfully by intentionally ignoring its obligations under 15 U.S.C. §1681e(a) in failing to properly vet, inquire into, and discover the true intent and false representations of Granite Bay, APC, NRRM, and LMS.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

101. It was the practice of Granite Bay to:

a. Access and use consumer reports for non-permissible purposes;

b. Use its computer systems to automatically request consumer reports;

c. Access those reports under a blanket certification that the reports would only be used for a permissible purpose; and

d. Assist debt settlement companies by securing those consumer reports for those debt settlement companies for marketing purposes.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

102. It was the practice of APC to:

a. Access and use consumer reports for non-permissible purposes;

35

b.      Use its computer systems to automatically request consumer reports;

c.      Access those reports under a blanket certification that the reports would only be used for a permissible purpose; and

d.      Use those consumer reports to market Vehicle Service Contracts and for other marketing purposes.

**ANSWER:** APC denies the allegations of this paragraph.

103.    It was the practice of NRRM to:

a.      Access and use consumer reports for non-permissible purposes;

b.      Use its computer systems to automatically request consumer reports;

c.      Access those reports under a blanket certification that the reports would only be used for a permissible purpose; and

d.      Use those consumer reports to market Vehicle Service Contracts and for other marketing purposes.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

104.    It was the practice of LMS to:

a.      Access and use consumer reports for non-permissible purposes;

b.      Use its computer systems to automatically request consumer reports;

c.   Access those reports under a blanket certification that the reports would only be used for a permissible purpose; and

d.   Use those consumer reports to market Vehicle Service Contracts and for other marketing purposes.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

105.   Granite Bay acted willfully by intentionally making false representations to Trans Union regarding its purpose in purchasing consumer reports.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

106.   APC acted willfully by intentionally making false representations to Trans Union regarding its purpose in purchasing consumer reports.

**ANSWER:** APC denies the allegations of this paragraph.

107.   NRRM acted willfully by intentionally making false representations to Trans Union regarding its purpose in purchasing consumer reports.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

108.   LMS acted willfully by intentionally making false representations to Trans Union regarding its purpose in purchasing consumer reports.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

109.   As a result of these FCRA violations, Defendants are liable to Ms. Blake for statutory damages from $100 to $1000 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2), as well as attorneys' fees and costs pursuant to Sections 1681n and 1681o.

**ANSWER:** APC denies the allegations of this paragraph as they may apply to APC.   APC denies that the remaining statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT I – VIOLATIONS OF 15 U.S.C. N 1681B, 1681E(A)
## (TRANS UNION)

110.    Ms. Blake incorporates the preceding allegations by reference.

**ANSWER:** APC reasserts its answers and responses set forth herein.

111.    Trans Union sold the consumer reports of Ms. Blake to Granite Bay, APC, NRRM, and LMS in violation of the FCRA, 15 U.S.C. §§ 1681b(a) and 1681e(a).

**ANSWER:** APC denies the allegations contained in this paragraph as they may apply to APC. APC denies that the remaining statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

112.    Trans Union knew or should have known that the prospective use of reports by Granite Bay, APC, NRRM, and LMS was not for a Permissible Purpose under §1681b.  As described above, even the most cursory investigation would have revealed this, and Trans Union thus had reasonable grounds for believing the consumer reports would not be used for a Permissible Purpose under §1681b.

**ANSWER:** APC denies the allegations contained in this paragraph as they may apply to APC. APC denies that the remaining statements contained in this paragraph require a response from APC as they do not constitute allegations asserted

against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

113.   Trans Union failed to implement and maintain reasonable procedures to limit the provision of the consumer reports of Ms. Blake to a section 1681b Permissible Purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

114.   Trans Union failed to make a reasonable effort to verify the identities of the entities to which Granite Bay was reselling the reports and the uses certified by Granite Bay prior to furnishing the consumer reports of Ms. Blake.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

115.   Trans Union failed to make a reasonable effort to verify the uses certified by APC, NRRM, and LMS prior to furnishing the consumer reports of Ms. Blake.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

116.   Trans Union willfully and recklessly disregarded its duties under 15 U.S.C. §§ 1681b and 1681e(a) to prevent misappropriation and misuse of the private and protected credit information of Ms. Blake.  Even a minimal level of diligence would have discovered that The Users were not using the information for a Permissible Purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

117.   Trans Union's failure resulted in the unlawful use of Ms. Blakes' credit information:   to target Plaintiffs for direct marketing and/or other impermissible marketing purposes.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

41

118.   Trans Union is liable to Ms. Blake for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT II – VIOLATIONS OF 15 U.S.C. §§ 1681b, 1681bM (GRANITE BAY, APC, NRRM, AND LMS)

119.   Ms. Blake incorporates the preceding allegations by reference.

**ANSWER:** APC reasserts its answers and responses set forth herein.

120.   Granite Bay purchased from Trans Union consumer reports containing the personal information of Ms. Blake.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

121.   APC purchased from Trans Union consumer reports containing the personal information of Ms. Blake.

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

42

122. NRRM purchased from Trans Union consumer reports containing the personal information of Ms. Blake.

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

123. LMS purchased from Trans Union consumer reports containing the personal information of Ms. Blake.

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

124. 15 U.S.C. §1681b(f) prohibits persons from using or obtaining consumer reports in the absence of a Permissible Purpose.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

125. The only Permissible Purpose for using consumer reports like those obtained by Granite Bay, APC, NRRM, and LMS regarding consumers with whom they have no business relationship is to make a "firm offer of credit or insurance."

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

126.   A "firm offer" is one that will be honored (subject to certain exceptions) if the consumer continues to meet the pre-selected criteria used to select them for the offer.  15 U.S.C. §1681a(1).

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

127.   Granite Bay is not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

**ANSWER:** APC states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

128.   APC is not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

**ANSWER:** APC denies the allegations of this paragraph.

129.   NRRM is not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

130.   LMS is not in the business of making firm offers of credit or insurance and had no intention to make any such firm offer.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

131.   Granite Bay willfully and recklessly disregarded its duties under 15 U.S.C. §1681b(f) to obtain a consumer report only for a Permissible Purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

132.   APC willfully and recklessly disregarded its duties under 15 U.S.C. §1681b(f) to obtain a consumer report only for a Permissible Purpose.

**ANSWER:** APC denies the allegations of this paragraph.

133.   NRRM willfully and recklessly disregarded its duties under 15 U.S.C. §1681b(f) to obtain a consumer report only for a Permissible Purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

134.   LMS willfully and recklessly disregarded its duties under 15 U.S.C. §1681b(f) to obtain a consumer report only for a Permissible Purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

135.   Granite Bays, APCs, NRRMs, and LMSs failure resulted in the unlawful use of Ms. Blake's credit information to target her for debt relief services, auto service contract telemarketing or other impermissible purposes.

**ANSWER:** APC denies the allegations of this paragraph as they may apply to APC.   APC denies that the remaining statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

136.   Granite Bay, APC, NRRM, and LMS are liable to Ms. Blake for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

**ANSWER:** APC denies the allegations of this paragraph as they may apply to APC. APC denies that the remaining statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT III – VIOLATIONS OF 15 U.S.C. 1681e(e)
## (GRANITE BAY)

137.   Ms. Blake incorporates the preceding allegations by reference.

**ANSWER:** APC reasserts its answers and responses set forth herein.

138.   Granite Bay purchased and resold from Trans Union consumer reports containing the personal information of Ms. Blake.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

139.   15 U.S.C. §1681e(e)(2)(A) requires a reseller to establish and comply with reasonable procedures designed to ensure that the report (or information) is resold only for a purpose for which the report may be furnished under 15 U.S.C. §1681b.

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

140.   15 U.S.C. §1681e(e)(2)(B) requires a reseller, before reselling the report, to make reasonable efforts to verify the identifications and certifications made under 15 U.S.C. §1681e(e)(2)(A).

**ANSWER:** APC states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

141.   Granite Bay purchases from Trans Union consumer reports that it then resells to debt settlement companies to further their business and marketing efforts.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

142.   The end-users to which Granite Bay resells the Trans Union consumer reports do not have a permissible purpose pursuant to 15 U.S.C. §1681b.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

143.   Granite Bay did not establish and comply with reasonable procedures designed to ensure that the report (or information) is resold only for a permissible purpose pursuant to 15 U.S.C. §1681b.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

144.   Granite Bay did not make reasonable efforts to verify the identifications and certifications, if any were made, of the end-users pursuant to 15 U.S.C. §1681e(e)(2)(B).

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

145.   Granite Bay willfully and recklessly disregarded its duties under 15 U.S.C. §1681e(e) to obtain and resell a consumer report to an end-user to be used only for a Permissible Purpose.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

146.   Granite Bays failure resulted in the unlawful use of Ms. Blake's credit information to target her for debt relief services or other impermissible purposes.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

147.   Granite Bay is liable to Ms. Blake for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. §1681n.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT IV – VIOLATIONS OF 15 U.S.C. §1681q
## (GRANITE BAY, APC, NRRM, AND LMS)

148.   Ms. Blake incorporates the preceding allegations by reference.

**ANSWER:** APC reasserts its answers and responses set forth herein.

149.   Granite Bay obtained the consumer reports of Ms. Blake under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

150.   APC obtained the consumer reports of Ms. Blake under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

**ANSWER:**  APC denies the allegations of this paragraph.

151.   NRRM obtained the consumer reports of Ms. Blake under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

**ANSWER:**  APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

152.   LMS obtained the consumer reports of Ms. Blake under false pretenses in violation of 15 U.S.C. §1681q and 15 U.S.C. §1681n.

**ANSWER:**  APC denies that the statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

153.   Ms. Blake was injured by this invasion of their privacy and suffered damages as a result.

**ANSWER:**  APC denies the allegations of this paragraph as they may apply to APC.  APC denies that the remaining statements contained in this paragraph require a response from APC as they do not constitute allegations asserted against

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## JURY DEMAND

154.   Ms. Blake demands trial by jury.

**ANSWER:** APC denies that the statements contained in this paragraph require a response from APC.

## RELIEF REQUESTED

155.   *ACCORDINGLY, Ms. Blake respectfully requests that this Court Grant the following relief:*

    a.   Statutory damages under 15 U.S.C. §1681n

    b.   Punitive damages;

    c.   Reasonable attorney's fees;

    d.   Costs of this proceeding;

    e.   Equitable or declaratory relief; and

    f.   All other relief to which Ms. Blake may be justly entitled.

**ANSWER:** APC denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against APC.

## AFFIRMATIVE DEFENSES

1.     Plaintiff has failed to state a claim upon which relief can be granted.

2.     Plaintiff's state law and common law claims are pre-empted by the Fair Credit Reporting Act, 15 U.S.C. Sect.1681, et seq. ("FCRA")

3.     Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

4.     Plaintiff's claims are barred in that under the FCRA APC's offer and mailing was for a firm offer of credit or insurance within the meaning of the FCRA.

5.     Plaintiff's claims are bared in whole or in part by 15 U.S.C. Sections 1681h(e) and/or 1681t.

6.     At all times APC acted within the absolute and qualified privileges afforded it under the FCRA, the United States Constitution, applicable State constitutions and the common law.

7.     Plaintiff's claims are barred in whole or in part by the equitable doctrines of estoppel, waiver and laches.

8.     Plaintiff has failed to take reasonable steps to mitigate her damages if any.

9.     Plaintiff's damages are the result of acts or omissions of Plaintiff.

10.     Plaintiff's damages are the result of acts or omissions by the other parties over whom APC has no responsibility or control.

11.     Any claim for exemplary or punitive damages asserted by Plaintiff violates APC's rights under the Due process and Excessive fines clauses of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the analogous provisions of applicable State constitutions and under the First Amendment of the Unite States Constitution and the analogous provisions of the applicable State constitutions.

12.     Plaintiffs claims are barred in that no credit report related to Plaintiff was willfully or negligently accessed for an impermissible purpose.

13.     Plaintiffs claims are barred in that APC believed at all times that Plaintiff's credit report was accessed for a permissible purpose nor was it accessed in reckless disregard of the need for a permissible purpose.

14.     APC reserves the right to assert additional defenses as may become apparent through additional investigation and discovery.

WHEREFORE, Defendant Automotive Product Consultants, Inc. denies that Plaintiff is entitled to judgment or to any relief sought, and respectfully requests that judgment be entered in its favor and against Plaintiff on all counts set forth in the Complaint directed at Automotive Product Consultants, Inc., and that Automotive Products Consultants, Inc. be awarded its costs incurred in defending this action, together with such other and further relief as the Court deems equitable and just.

Respectfully submitted,

/s/ Jonathan C. Myers
Jonathan C. Myers (P69972)
Jaffe Raitt Heuer & Weiss, P.C.
Attorneys   for   Defendant   Automotive
Produce Consultants, Inc. only
Grand Park Centure
28 W. Adams Ave., Suite 1500
Detroit, Michigan 48226
(248) 351-3000
(248) 351-3082
jmyers@jaffelaw.com

-and-

JENKINS & KLING, P.C.


By:   /s/ Michael P. Stephens
    Michael P. Stephens (MO 37491)
    Jason M. Rugo (MO 30902)
    150 N. Meramec, Suite 400
    St. Louis, Missouri 63105
    (314) 721-2525  Phone
    (314) 721-5525  Facsimile
    mstephens@jenkinskling.com
    jrugo@jenkinskling.com


## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2018, I caused the ***Defendant Automotive Product Consultants, Inc.'s Answer To Complaint And Jury Demand With Affirmative Defenses*** to be electronically filed with the Clerk of the Court using the ECF system, which sent notification of such filings to all ECF Participants.

Respectfully Submitted,

JAFFE, RAITT, HEUER & WEISS, P.C.

/s/ Jonathan C. Myers
Jonathan C. Myers (P69972)
Jaffe Raitt Heuer & Weiss, P.C.
Attorneys for Defendant Automotive
Produce Consultants, Inc. only
Grand Park Centure
28 W. Adams Ave., Suite 1500
Detroit, Michigan 48226
(248) 351-3000
(248) 351-3082
jmyers@jaffelaw.com

Dated:  March 23, 2018